These three cases were consolidated for trial on the following stipulated facts:
CV 93 0521515
1. See revised Complaint of July 16, 1993 and response by way of Special Defense in Counter Claim dated March 16, 1994, whereby paragraphs 3, 4, 5, 6 and 7 of the revised Complaint were admitted.
2. Also note the partial admissions in said March 16 Answer to paragraph 2 A, B and C.
3. Note also that in the plaintiff's Answer to Counter Claim dated April 19, 1994 paragraphs 1, 2, 3, 5, 7 and 8 admitted as are parts of paragraphs 4 and 9.
4. By way of responses to Requests for Admissions, the plaintiff has admitted that she is the sister of the attorney-in-fact, Norman Staphos, that the conveyance tax forms filed with the Town Clerk's office in Hartford, namely a quit-claim deed referred to in 2C of the plaintiff's revised Complaint indicated that the transfer was "without consideration."
5. The plaintiff has acknowledged in response to her Request to Admission that the transfer referred to in paragraph C was a "gift."
6. As this case has been consolidated with two others, the Agreed Facts for the Fact Finder in each of the other two cases are hereby adopted and incorporated as the Agreed Facts for the Fact Finder in this case.
CV 93 0526844
1. As is indicated by the pleadings, namely by the Complaint dated June 21, 1993, and the Answer to it filed May 18, 1994, the late Donato D. Antone, Sr. (hereinafter "Antone") did execute a statutory short form power of attorney on March 12, 1992, at the St. Francis Hospital appointing the defendant as his attorney-in-fact.
2. As indicated by the pleadings, prior to the death of Antone, the defendant, attempting to use his authority as such CT Page 5163-OO attorney-in-fact, gave away as gifts various assets of his principal, namely:
a) by quit-claim deed dated March 20, 1992, signed by the defendant as attorney-in-fact to the defendant's sister, Linda Wosczyna, the half interest of the principal in a commercial property at 491-495 Farmington Avenue, Hartford, Connecticut;
b) by quit-claim deed signed by the defendant on March 26, 1992, to Albina Cardin, who acknowledged that at that time they were the best of friends and now wife, the principal's interest in an undeveloped lot in Beckett, Massachusetts; and
c) cash including at least $500.00 to his sister. Linda Wosczyna and at least $8,437.44 to himself.
3. The conveyance tax forms that were filed with the City of Hartford Town Clerk's office at the time the quit-claim deed for the Farmington Avenue property was recorded indicated that the transfer was for no consideration.
4. Until the signing of the power of attorney on March 12, 1995, the defendant and Antone had not had any financial relationship during the preceding five (5) years.
5. During the five (5) years preceding Antone's death, the only gifts that Antone had given to the defendant were birthday presents and holiday time presents which included such items as neck ties, dinners at restaurants, etc.
6. The defendant did not know the notary who was used for the March 12 short form power of attorney, but got his name from Albina Cardin who knew him.
7. The defendant paid the notary $100.00 to come some seven or eight blocks from his travel agency business on New Park Avenue in Hartford to St. Francis Hospital to notarize the power of attorney document.
8. The family of Antone at the time he signed the power of attorney document included his son, Donato, Jr. (a resident of the state of Virginia and Administrator of the plaintiff estate), two grandsons who reside in California named Daniel and Luke, the defendant (a nephew by reason of being a son of Antone's sister who died three or four months prior to the signing of the power CT Page 5163-PP of attorney document), Linda Wosczyna (a niece, the sister of Staphos), Nicolas Staphos, a twin brother of the defendant, and therefore also a nephew, a sister Yolanda Lanzellotti of Queens, New York, a sister Regina of 16 South Marshall Street, Hartford, Connecticut, and the four children of his sister Yolanda Lanzellotti (Carlo, Norma, Martha, and Leonora), namely one more nephew and three more nieces.
9. Antone's health declined on March 18, 1992 to such an extent that from that day on it was never possible to communicate with him.
10. Antone died on April 12, 1992.
11. As this case has been consolidated with two others, the Agreed Facts for the Fact Finder in each of the other two cases are hereby adopted and incorporated as the Agreed Facts for the Fact Finder in this case.
CV 93 0526843
1. Paragraphs 1, 2 and 3 of the August 25, 1994, of the Complaint have been admitted by the defendant. Thus, it is stipulated that the late Donato D. Antone, Sr. (hereinafter "Antone") did acquire fee ownership of an unimproved building lot in a subdivision in Beckett, Massachusetts, in 1987, which he still owned during March 1992. Antone executed a durable short form statutory power of attorney document March 12, 1992, appointing Norman Staphos as his attorney-in-fact.
2. On March 26, 1992, the said Norman Staphos, acting under the color of the authority granted to him by that statutory short form power of attorney, executed and delivered to the defendant, as a gift, a quit-claim deed conveying to the defendant the interest of Antone in said Beckett, Massachusetts real estate.
3. That short form power of attorney document had been brought by Norman Staphos to St. Francis Hospital in Hartford on March 12, 1992, while Antone was a patient in said hospital and Antone executed it there then.
4. One of the witnesses on said statutory short form of March 12, 1992, was the defendant.
5. The other witness on said document was Noel Wosczyna, the CT Page 5163-QQ husband of Linda Wosczyna, who is the sister of Norman Stpahos [Staphos], the attorney-in-fact.
6. The notary on said statutory short form power of attorney document was Aldolpho Carlino, a travel agent whose office is some seven or eight blocks from St. Francis Hospital.
7. His services were obtained by the defendant and he was paid $100.00 by Norman Staphos to come to the hospital to take the acknowledgement.
8. The March 26 quit-claim was delivered to the defendant by Norman Staphos as "a gift." At that time, Antone did not owe the defendant anything.
9. At the time of said transfer, the defendant was a "close personal friend" of the attorney-in-fact and is now his wife.
10. Said Antone and the defendant had never had any discussions whatsoever about the possibility of his transferring the Beckett, Massachusetts real estate to the defendant.
11. Antone's lawyer was David M. Roth of Levy Droney of Farmington.
12. The quit-claim deed making the gift to the defendant was prepared for the attorney-in-fact Robert Francis, an attorney whose office is in Elmwood, Connecticut, and whom was selected by the attorney-in-fact.
13. Antone's health declined on March 18, 1992 to such an extent that from that day on it was never possible to communicate with him.
14. Antone died on April 12, 1992.
15. As this case has been consolidated with two others, the Agreed Facts for the Fact Finder in each of the other two cases are hereby adopted and incorporated as the Agreed Facts for Fact Finder in this case.
In addition to the stipulated facts, the court heard testimony from several witnesses.
There are three related issues of fact and law CT Page 5163-RR
1. Does the appointment of an attorney-in-fact pursuant to a statutory short form power of attorney as provided in Sections 142 et seq. of the Connecticut General Statutes, confer upon the attorney-in-fact the authority to make gifts on behalf of the principal? and,
2. If not, does the attorney-in-fact need specific written authorization from the principal to make gifts or can he receive his authorization orally?
3. If the attorney-in-fact was authorized to made gifts, did the gifts he made violate his fiduciary duty?
Issue number one has been addressed in these consolidated cases by two judges and each reached a different conclusion. In the Wosczyna case Judge Sheldon in a Memorandum of Decision dated July 26, 1994 addressing a Motion to Strike found that gifts are authorized by a statutory short form power of attorney. But in the Staphos case Judge Corradino in a Memorandum of Decision dated November 17, 1994 addressing a Motion for Summary Judgement found that the statutory short form power of attorney does not authorize the attorney-in-fact to make gifts.
Even if Judge Sheldon's legal conclusion is followed, the gifts in these cases cannot withstand a factual scrutiny. Any gift made on behalf of a principal must be done within the framework of the agent's fiduciary responsibility. The power of attorney was a written, formal contract of agency creating a principal-agent relationship between Antone and Staphos. "Agency is the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. The one for whom action is to be taken is the principal. The one who is to act is the agent." Long v. Schull, 184 Conn. 252.
The evidence in these consolidated cases indicates clearly and convincingly that the agent, Staphos, was acting in his own self-interest or in the interest of others, and not on behalf of the principal, Antone, when he made the transfers in question.
There was no history of gift giving by the principal either for tax purposes, charity, friendship or familial affection except for an occasion holiday gift of an insignificant monetary value. The only evidence of Antone's donative intent to benefit CT Page 5163-SS Staphos, Cardin and Wosczyna, by way of the power of attorney, was the testimony of Staphos that his uncle gave him an oral authorization. This testimony is not given credit by this trier. It does not ring true in light of other credible evidence and is self-serving. The court does not believe that Wosczyna, Staphos and Cardin were the natural objects of Antone's affection to the exclusion of his grandchildren and adopted son. The testimony of the grandchildren's maternal grandmother Frances Werley indicates that they were the family members Antone wished to benefit and his attorney testified that Antone planned to leave his estate to his son.
The gifts were made during the principal's last illness. All the trial testimony indicated that he believed that he would recover. It does not make sense to conclude that he wished to give away virtually all of his assets so that upon his recovery he would have little to live on and would be dependent upon others.
Also, the fact that Staphos did not hire his uncle's lawyer, who was familiar with his affairs, to prepare the power of attorney is curious. Speed seemed to be of the essence in getting this accomplished.
The gifts were made to the fiduciary himself, his sister and the woman he later married. They did not benefit the principal or go to the natural objects of his bounty. They denuded his estate and would have left him little to live on upon his expected recovery. They left nothing in the estate to satisfy legitimate creditors. If the decedent wished to transfer the real property, he could have executed a deed. A power of attorney is usually made so that a person's affairs may be attended to during an incapacity or absence, not as a substitute for a will or intervivos gifts. The power of attorney in these cases was improperly used to circumvent the formality and legal safeguards required in the execution of a deed or a will.
The court finds that even if the power of attorney document authorizes gifts, these gifts cannot stand because it is found clearly and convincingly that Staphos willfully, deliberately and intentionally violated his fiduciary responsibilities.
Therefore, judgment enters for the defendants/cross-complainants on the Wosczyna case and for the plaintiff in the Staphos and Cardin cases. CT Page 5163-TT
The court orders each party to file a brief by August 30, 1996 regarding the appropriate relief to be granted pursuant to these judgements.
So ordered,
-------------------------- John J. Langenbach, Judge